UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOSTER, MURPHY, ALTMAN & NICKEL, PC,<br><br>*Plaintiff*,<br><br>v.<br><br>ASCLETIS PHARMA, INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 23-03415 (AHA) |

**MEMORANDUM OPINION**

Plaintiff Foster, Murphy, Altman & Nickel, PC (Foster Murphy), brought this breach of contract action to recover fees for legal services rendered to Defendants Ascletis Pharma, Inc., Ascletis Pharmaceuticals Co., Ltd., Ascletis Bioscience Co., Ltd., Gannex Pharma Co., Ltd., and Dr. Jinzi Jason Wu, in connection with a trade secrets investigation. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process. The motion is denied.

**I.    BACKGROUND**

On December 29, 2022, Viking Therapeutics, Inc., filed a trade secrets action against Defendants in the Southern District of California. Doc. 12-1 at 4 & n.2; *see* Doc. 18-2 at 3. That same day, Viking filed a complaint against Defendants with the U.S. International Trade Commission (ITC), also alleging violations of trade secret law. Doc. 1 ¶ 15.

All Defendants have foreign residency. Defendant Ascletis Pharma is a Cayman Islands corporation headquartered in China. *Id.* ¶ 6. Defendants Ascletis Pharmaceuticals and Ascletis Bioscience are Chinese corporations. *Id.* ¶¶ 7–8. Defendant Gannex is a Chinese corporation and

a wholly owned subsidiary of Ascletis Pharma. *Id.* ¶ 9. Defendant Dr. Wu is the CEO of the Ascletis entities, and he lives and works in China. *Id.* ¶ 10; Doc. 18-2 at 9.

In February 2023, the ITC initiated an investigation based on Viking's complaint. Doc. 1 ¶ 15. Foster Murphy alleges that it was approached by another law firm, Rimon PC, to co-represent Defendants in the investigation. *Id.* ¶ 17. According to the complaint, Foster Murphy performed extensive work on the investigation, but Defendants refused to pay Foster Murphy's invoices. *Id.* ¶¶ 20–29.

On November 14, 2023, Foster Murphy brought this action alleging breach of contract and other claims, filing a return of service for each defendant. Docs. 4–8. After Defendants failed to appear, the Clerk of Court entered default. Doc. 11. Foster Murphy moved for default judgment. Doc. 12. Defendants appeared shortly thereafter and the Court granted their motion to vacate the default. *Foster, Murphy, Altman & Nickel, PC v. Ascletis Pharma, Inc.*, No. CV 23-3415, 2024 WL 2701073 (D.D.C. Feb. 13, 2024); *see* Doc. 22. Defendants also filed the present motion to dismiss, arguing that the case should be dismissed because they have not been adequately served. Doc. 18.

## II.   LEGAL STANDARD

A motion to dismiss for insufficient service of process is governed by Rule 12(b)(5). "The plaintiff has the burden of establishing the validity of service of process." *Roland v. Branch Banking & Tr. Corp.*, 149 F. Supp. 3d 61, 64 (D.D.C. 2015). To do so, the plaintiff "must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (citation omitted). "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Doe #1 v.*

*Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 122 (D.D.C. 2021) (alteration in original) (quoting *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007)). "Failure to effect service is grounds for dismissal." *Johnson-Richardson v. Univ. of Phoenix*, 334 F.R.D. 349, 352 (D.D.C. 2020). But a court may also exercise its discretion to "direct that service be effected within a particular period of time." *Id.* (quoting *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004)).

### III.    DISCUSSION

Foster Murphy argues that it properly served Defendant Ascletis Pharma through its Chief Business Officer. Foster Murphy also argues that all Defendants were served through Dr. Wu. The Court agrees with the former, but not the latter.

**A.  Foster Murphy Has Adequately Served Ascletis Pharma**

Foster Murphy says that it served Defendant Ascletis Pharma through its Chief Business Officer, John Gargiulo. Doc. 21 at 7; *see* Docs. 17, 17-1.

Under Rule 4(h), a plaintiff may serve a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). "In the case of a corporation, the corporate officer contemplated as the recipient of service is not necessarily the chief executive officer of the corporation." 4A Wright & Miller, *Federal Practice and Procedure* § 1102 (4th ed.). The court may consider an individual's title and whether it suggests on its face that the individual is an officer or agent. *See, e.g.*, *Hockenbergs Equip. & Supply Co. v. Team Contractors, LLC*, No. 18-CV-346, 2019 WL 1253576, at *3 (W.D. Tex. Mar. 11, 2019); *Kwan v. Schlein*, 441 F. Supp. 2d 491, 496 (S.D.N.Y. 2006).

Defendants do not dispute that Gargiulo was served with the summons and complaint. Instead, Defendants respond that Gargiulo is not an employee, officer, or managing agent of

3

Ascletis Pharma, relying on a declaration from Dr. Wu. Doc. 23 at 9; Doc. 23-1 at 133. But Foster Murphy has submitted several contemporaneous documents demonstrating that Ascletis Pharma recognizes Gargiulo as its Chief Business Officer. Those documents include (1) a June 2022 press release from Ascletis Pharma announcing the appointment of Gargiulo as Chief Business Officer; (2) a September 2023 press release from Ascletis Pharma identifying Gargiulo as Chief Business Officer; (3) a 2022 annual report from Ascletis Pharma noting Gargiulo's appointment as Chief Business Officer; and (4) a February 2024 screenshot from Ascletis Pharma's website identifying Gargiulo as Chief Business Officer. Doc. 27-1 at 6, 10, 29, 203.[1] Given that Ascletis Pharma affirmatively and repeatedly holds Gargiulo out as its Chief Business Officer, it cannot now seek to evade service by claiming it has no association with him. The Court accordingly finds that Foster Murphy properly effected service on Ascletis Pharma by serving Gargiulo. *See Hockenbergs*, 2019 WL 1253576, at *4 (finding that service was proper under Rule 4(h) where defendant's website identified individual served as chief financial officer and manager); *see also Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Metro Man I, Inc.*, No. CV 22-748, 2023 WL 4623566, at *3 (D.D.C. July 19, 2023) (noting that plaintiffs had served defendant through its chief financial officer).

### B. Foster Murphy's Service Of Other Defendants Through Dr. Wu Is Ineffective Due To Process Immunity

Foster Murphy says that it also served the remaining Defendants through Dr. Wu. Doc. 20 at 4–5. Defendants respond that Dr. Wu was immune from service at the time Foster Murphy delivered the documents because he was present to testify in the ITC hearing. Doc. 23 at 2.

---

[1] After Defendants contested Gargiulo's affiliation with Ascletis Pharma in their reply brief, the Court granted leave for Foster Murphy to submit a sur-reply with these documents. Defendants have not contested the authenticity of the documents, arguing only that Foster Murphy should not have been permitted to sur-reply. Doc. 26 at 1–2.

4

Nearly a century ago, the Supreme Court noted "[t]he general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit, are immune from service of process in another." *Lamb v. Schmitt*, 285 U.S. 222, 225 (1932). The Court explained that allowing service of process in other suits might discourage "the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation." *Id.*; *see Greene v. Weatherington*, 301 F.2d 565, 568 (D.C. Cir. 1962) (noting that the privilege is "designed to prevent interference with the administration of justice, and, particularly, to encourage those who are not bound to attend to do so voluntarily and thus assist the courts in their work"). At the same time, the Court observed that this immunity "should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require." *Lamb*, 285 U.S. at 225.

The Court finds that process immunity applies here. It is undisputed that at the time Dr. Wu was served, he was in D.C. because he had agreed to testify in the ITC proceeding—indeed, he was served as he was exiting the building where the proceedings took place.

Foster Murphy asks the Court to exercise its discretion to decline process immunity on the basis that Dr. Wu's presence in D.C. was not voluntary. Foster Murphy relies on *Greene*, which declined immunity to a civil defendant who had been served when subject to arrest and detention on a criminal offense. 301 F.2d at 568. There, the D.C. Circuit explained that where the defendant was held in the jurisdiction in criminal custody, "the principal reason for the immunity, namely, to encourage voluntary cooperation with judicial administration, is absent." *Id.* That is not so here. Dr. Wu was not brought to D.C. on arrest and detention; he was in D.C. because he was called as a witness in the ITC proceedings. Doc. 20 at 11. The fact that Dr. Wu traveled to D.C. in response to a call to testify in the proceedings does not compare to *Greene*. The facts here are comparable

5

to the run-of-the-mill process immunity case, and the interest in "the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation" is live. *Lamb*, 285 U.S. at 225; *see also Queen v. Schmidt*, No. CV 10-2017, 2015 WL 5175712, at *7 (D.D.C. Sept. 3, 2015) (rejecting plaintiffs' "conclusory assertion" that defendant's presence in the forum "was not voluntary due to the various penalties that would have been exacted upon her had she not attended the proceeding" (citation omitted)); *Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Sols., Inc.*, 550 F. Supp. 2d 23, 28 (D.D.C. 2008) (holding that defendant present in D.C. "under the compulsion of a deposition summons" to testify in Superior Court action was immune from service of process in federal action).

Foster Murphy also asks the Court to decline process immunity because the ITC proceeding and this suit are "not independent of each other or unrelated." *Lamb*, 285 U.S. at 227; *see* Doc. 20 at 12. In *Lamb*, the Supreme Court applied this exception because the second action was brought "in aid of the first . . . to secure rights asserted in the first suit." 285 U.S. at 227. "From the viewpoint of the due administration of justice in the first suit, the second was as much a part of it as if it had been an interlocutory motion to compel the production in court of documents or of property involved in the suit." *Id.* But that is not the case here—nothing about Foster Murphy's action for breach of contract and other private claims for nonpayment by Defendants would aid the ITC action. As Foster Murphy concedes, "[t]he causes of action, the parties bringing them, and the forum" are different. Doc. 20 at 12. While it is true that Foster Murphy seeks its fees for work it performed in the ITC investigation, that is not the type of close relationship that has warranted an exception to process immunity and the interests it protects.

6

The Court therefore concludes that delivery of the summons to Dr. Wu while he traveled to D.C. to participate in the ITC hearing did not effect service on the remaining Defendants.[2]

## IV.    CONCLUSION

The Court holds that Foster Murphy properly served Defendant Ascletis Pharma. Ascletis Pharma shall respond to the complaint within 21 days of this order. Foster Murphy shall have 90 days from this order to serve the other defendants and avoid dismissal as to those defendants. Defendants' motion to dismiss is accordingly **DENIED**.

A separate order consistent with this decision accompanies this memorandum opinion.

**SO ORDERED.**

                                                                                                           _____

                                                    AMIR H. ALI
                                                   United States District Judge

Date:   December 20, 2024

---

[2] Defendants also dispute that Dr. Wu was ever served. Doc. 18-1 at 14. Given that the Court finds Dr. Wu would have been immune from service, it need not resolve this dispute.